**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISON**

| | |
|---|---|
| LAJUAN BEBEE,<br><br>Petitioner,<br><br>v.<br><br>WARDEN ANGELA STUFF,<br><br>Respondent. | CASE NO. 1:26-cv-01467-CEF<br><br>JUDGE CHARLES ESQUE FLEMING<br><br>MAGISTRATE JUDGE<br>REUBEN J. SHEPERD<br><br>**REPORT AND RECOMMENDATION** |

## I. Introduction

On June 11, 2026[1], Petitioner LaJaun Bebee ("Bebee"), a prisoner in state custody, filed a Petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF Doc. 1). On the same day, Bebee file a Motion for Stay and Abeyance requesting the Court to stay his federal habeas proceedings while his case proceeds in state court. (ECF Doc. 4).

## II. Factual Background

> {¶ 2} On January 23, 2023, a Cuyahoga County Grand Jury indicted Bebee for the alleged shooting and killing of Delvon Williams, and on January 27, 2023, Bebee pleaded not guilty to the indictment. On February 7, 2024, Bebee waived his right to a jury trial on Count 9, having weapons while under disability, and a jury trial commenced on the remaining counts. At trial, Bebee claimed he shot Delvon Williams in self-defense.

[1] Federal district courts apply the prison mailbox rule, accepting filings as of the date placed in the prison mail system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

{¶ 3} The charges stem from the events that took place on November 6, 2022, when the following individuals gathered at Aja Ferrell's ("Aja") apartment situated on Jelliffe Street in Cleveland, Ohio: Bebee, Aja and her minor children, Kelsey Lee [("]Kelsey"), Frank Bebee ("Frank") — Bebee's cousin, Jordan Horn ("Jordan") and his two minor children, Shelena Stokes ("Shelena"), and Delvon Williams ("Debo"), who went by the nickname Debo. The partygoers gave varying versions of the events that occurred that evening, although Frank did not testify because the parties were unable to locate him prior to trial.

Lajuan Bebee

{¶ 4} The following summarizes Bebee's trial testimony.

Bebee and Frank went into the kitchen to charge Bebee's mobile phone. Kelsey, who was very intoxicated, began to argue with Shelena. Aja interceded in the argument, and she and Shelena stepped outside the front door to talk. While Aja and Shelena were outside, Kelsey and Debo began arguing in the living room. Kelsey said to Debo, "[T]his my [dude], Bebee, and he'll pop you." Tr. 1167. Bebee testified that he did not want to get involved in the confrontation between Kelsey and Debo so he remained in the kitchen with Frank. Debo walked away from Kelsey; shook hands with Frank, Jordan, and Bebee; and told the men they were cool. Debo then started to descend the front stairway before he turned around and returned to the living room. At that point, Kelsey threw a cup of ice on Debo, and Debo responded with smacking Kelsey on the face several times.

{¶ 5} Bebee did not observe Debo holding a gun prior to this time, and Bebee testified that neither he nor Frank provoked Debo.

{¶ 6} Debo walked again towards the front stairway, stopped, turned around, and headed for the kitchen where Frank and Bebee stood. Debo entered the kitchen, pulled out his gun, and "cocked it" — or put a bullet into the gun's chamber — causing Bebee to fear for his life. No words were exchanged between Debo and Bebee, and Frank stood behind Bebee. As Debo walked towards Bebee, Debo shot three or four times at Bebee, from a distance of two to three feet, and missed him each time.

{¶ 7} As soon as Bebee saw Debo approaching him with his gun drawn and pointed at Bebee, Bebee pulled out his gun to defend himself and immediately fired five bullets at Debo, striking him:

DEFENSE COUNSEL: And when he pulled out his gun, how did you feel?

BEBEE: I was in fear for my life.

DEFENSE COUNSEL: You were in fear for your life because why?

BEBEE: Because he pulled out a gun. Not only did he do that, he pulled in a chamber. So, I pulled my gun out to defend myself because I'm scared. And then

he shoots, like, it wasn't — it ain't, like, he was trying to pull it out and threaten me. He pulled it out to start shooting. He tried to kill me.

DEFENSE COUNSEL: Did he aim the gun at you, sir?

BEBEE: Yes.

DEFENSE COUNSEL: And then shot?

BEBEE: Yes.

DEFENSE COUNSEL: What was your response to that?

BEBEE: I shot back.

Tr. 1141. Once Debo was hit, he moved into the living room, so Bebee stopped firing his gun and attempted to leave out the front door. As Bebee ran through the living room towards the front stairway, Debo pointed his gun at him and fired another gunshot and, therefore, Bebee fired a shot towards Debo in the living room. Bebee denied that he stood over Debo, while Debo was on the living floor, and shot him.

{¶ 8} Following the shooting, Bebee ran down the front stairs with Shelena at his side. Once they were outside, Shelena fell to the ground, and Bebee returned inside the apartment to retrieve his phone and to confirm that Frank was uninjured. Inside the apartment, Bebee grabbed his camouflage coat and hoodie from the living room couch — but forgot his mobile phone because he was intoxicated and in shock — and again exited by the front stairway.

{¶ 9} Bebee testified that he returned inside the apartment a second time to obtain his mobile phone. Bebee denied that he returned inside because he observed the arrival of a security guard or policeman on the street. Bebee also denied he was comfortable entering the apartment because he knew Debo was dead. Bebee stated he grabbed his mobile phone from the kitchen and, upon leaving the apartment, he observed and picked up a gun from the ground. Bebee testified that he did not know to whom the firearm belonged, but he picked it up to prevent someone from using it to shoot him in the back.

{¶ 10} As Bebee left the apartment for the last time, he ran into Aaron Turner ("Turner"), a private security guard, outside the front door. Upon bumping into Turner, Bebee dropped his camouflage coat, mobile phone, and glasses and fled the area.

{¶ 11} After running from Aja's apartment, Bebee went to a friend's home nearby, and his friend lent Bebee a pair of pants and hoodie that he put on over his own clothes. Bebee then took a bus to another neighborhood where he spent the night. Bebee testified that he spent the next two months on the run, living in five or six

locations, attempting to evade the police and to hide from individuals who threatened to kill him because he shot Debo.

{¶ 12} A video recording that captured the happenings outside Aja's front door is consistent with Bebee's trial testimony and the comings and goings of the individuals in the apartment.

{¶ 13} Bebee conceded that his trial testimony, as summarized above, was inconsistent with his January 12, 2023 police interview. At his police interview, Bebee initially denied being present when Debo was shot and then stated he saw Debo with a gun but fled the apartment before shots were fired. Bebee testified that he was intoxicated and scared while providing his police statement, and he made up a story so he would not go to jail. The State played a recording of Bebee's police interview at trial.

{¶ 14} Bebee sustained no injuries the night of November 6, 2022.

Kelsey Lee

{¶ 15} Kelsey testified although she stated that she did not recall all of the details surrounding the shooting due to her consumption of alcohol and marijuana that night. According to Kelsey, she argued with Shelena, Debo defended Shelena, and Debo struck Kelsey causing her to fall to the ground. Kelsey then crawled to the living room couch where she sat and yelled, to no one in particular, that she was upset about Debo's actions. Kelsey testified at trial — but did not state during her police interviews on November 6, 2022, and November 22, 2022 — that Bebee was also sitting in the living room at that time, and he stood and walked into the kitchen where Debo and Shelena were standing. Kelsey denied making any statements while sitting in the living room asking Bebee or others to defend her after being struck by Debo.

{¶ 16} While seated on the living room couch, Kelsey heard two gunshots from the kitchen and went to investigate. Kelsey did not see the shooting. Kelsey observed Debo on the kitchen floor and no one else in the kitchen. Kelsey immediately checked on the children to make sure they were unharmed and returned to the kitchen to find Debo gone. Kelsey found Debo on the back stairway and administered CPR, along with Aja, until the police and ambulance arrived.

{¶ 17} A video recording of the back door shows Kelsey dragged Debo out the back door so that he was lying flat and she and Aja provided CPR.

{¶ 18} Kelsey conceded that during her November 22, 2022 police interview, she reported that she did not have an independent recollection of much of the night of November 6, 2022, and many of her statements during the interview stemmed from a conversation she had with Jordan following the shooting.

Aja Ferrell

{¶ 19} Aja testified that she was outside talking with Shelena when she heard multiple gunshots fired inside her apartment. Aja ran up the stairs to the apartment, behind Shelena, and when they were approximately halfway up the stairs, Shelena was shot in the arm and retreated back outside. Aja continued upstairs and immediately checked on her children. When Aja left the children's bedroom, everyone had left the apartment and she observed Debo towards the bottom of the back stairway. Aja helped Kelsey administer CPR to Debo.

{¶ 20} Aja conceded that during her November 6, 2022 police statement, she stated that she was in her children's bedroom when she heard gunshots. Aja also admitted she was "pretty intoxicated" at the time of the shooting but she "sobered up" when she heard gunshots. Tr. 575.

Shelena Stokes

{¶ 21} Shelena testified that she was outside with Aja when she heard yelling from inside the apartment and they ran up the front stairway. Inside the apartment, Shelena observed Bebee standing near the kitchen and Debo and Kelsey in the living room. Debo slapped Kelsey on the face, and Shelena attempted to diffuse the situation but Kelsey made a comment that resulted in everyone yelling at one another. Unexpectedly, Shelena heard gunfire and, while running for the front stairway, she was shot in the arm. Shelena heard three gunshots and she testified that the first gunshot hit her arm. Shelena ran down the front stairway and outside and, when she subsequently entered the apartment, she saw Debo at the bottom of the back stairway. Upon seeing Debo, Shelena immediately exited the apartment by the front stairway. Shelena then saw Bebee leave by the front door and drop his phone, coat, and eyeglasses.

{¶ 22} Prior to the shooting, Shelena observed a firearm at Debo's waist. Shelena neither saw nor heard Debo threaten Bebee, and she did not see who shot her or Debo.

Jordan Horn

{¶ 23} Jordan testified that he was seated in the living room when Debo slapped Kelsey and Kelsey stated that Bebee was going to kill Debo. Debo then walked into the kitchen — with his gun in his pocket — where Bebee was located. Jordan could not see inside the kitchen, but he heard approximately six gunshots fired immediately upon Debo entering the kitchen. According to Jordan, he is familiar with firearms and the first few gunshots were fired from a smaller, .22 caliber gun and the subsequent four shots were fired from a larger caliber firearm.

{¶ 24} Debo staggered out of the kitchen and collapsed face down on the living room floor, dropping his gun. Bebee exited the kitchen, stood over Debo and shot him in the back, picked up Debo's gun, and left the apartment with both guns. When Jordan soon thereafter left the apartment with his children, Bebee was walking up

the front stairs and said, "I don't know what happened." Tr. 953. The front door video recording confirms that Bebee reentered the apartment as Jordan left with his children.

{¶ 25} Jordan admitted that all the individuals at the apartment had been drinking and he was "toasted." Tr. 965.

{¶ 26} Jordan testified that he knew Debo had a .22 caliber gun and, in fact, had heard Debo previously fire that gun. Upon cross-examination, Jordan conceded that during his November 9, 2022 police interview, he told the police that the first two gunshots he heard were from a small caliber gun that he thought was Debo's and then he heard four or more gunshots from a larger caliber gun. The State redirected Jordan on that topic:

ASSISTANT PROSECUTING ATTORNEY: All right. Do you recall telling police that you heard six shots?

JORDAN: Yes.

ASSISTANT PROSECUTING ATTORNEY: And that you think that those first two were from a smaller caliber.

JORDAN: Yes.

ASSISTANT PROSECUTING ATTORNEY: Now, on direct examination when I talked to you about that, you said you weren't sure. You said it sounded like a smaller caliber gun, right?

JORDAN: Yes.

ASSISTANT PROSECUTING ATTORNEY: And then when defense was asking you questions, you said, you know, you were pretty certain that it was a smaller caliber gun. Is that — can you kind of make sense of that for us?

JORDAN: The reason I feel like it was a smaller caliber gun, because the shot — the sound wasn't as loud. Like, you know, when the first couple shots went off, you really couldn't tell at first. But once you — once the following succession followed, you could tell it was gunshots, like.

ASSISTANT PROSECUTING ATTORNEY: Okay. But you couldn't see and hear and tell where those gunshots were, you know, where the person who was firing those shots?

JORDAN: Yeah. I couldn't see who was firing, no.

ASSISTANT PROSECUTING ATTORNEY: All right. And you said you're familiar with guns, with the sound. And you're just — you know, everybody's experience with firearms, depending on where somebody is standing and what

objects are kind of in the way, would the sound be different depending on some of those things?

JORDAN: Yes.

Tr. 987-988.

{¶ 27} Approximately one week after the shooting, Jordan completed a photo lineup and identified Bebee as Debo's shooter. Yet, at trial, Jordan — who appeared as a witness only because he was apprehended by the U.S. Marshals — claimed he had poor eyesight and was unable to confirm if Bebee was the shooter.

Police Investigations

{¶ 28} The Crime Scene Unit of the Cleveland Division of Police investigated Debo's shooting. Police officers collected one 9 mm bullet and six 9 mm cartridge casings — three in the kitchen, one on the stairway landing, one in the living room, and one underneath the living room couch. No .22-caliber casings or bullets were recovered. According to James Kooser, a firearm and tool mark examiner with the Cuyahoga County Regional Forensic Sciences Laboratory ("Lab"), the absence of .22-caliber shell casings meant either a .22-caliber gun was not shot at the crime scene or, for whatever reason, the shell casings were kicked, removed, or fell to an area where they were not located during the crime scene investigation.

{¶ 29} The police noted suspected bullet defects — holes where bullets may have entered — on the wall at the top of the front stairway and on the kitchen ceiling. The police also observed a suspected bullet defect in the kitchen ceiling in the apartment situated below Aja's apartment. A visual inspection of the holes did not reveal a bullet, and the officers did not remove the walls for further inspection.

{¶ 30} On January 12, 2023, the U.S. Marshals apprehended Bebee from the home of his girlfriend, Rikaya Rivers ("Rikaya"), and pursuant to a search warrant, recovered two firearms — a .22-caliber semiautomatic pistol hidden inside a closet and a 9 mm handgun hidden behind an access panel and underneath a bathtub. Forensic testing revealed the spent bullet and six casings recovered from the crime scene were discharged from the 9 mm firearm found in Bebee's possession when he was apprehended in January 2023. Bebee testified that the .22-caliber firearm was Debo's gun that Bebee picked up on the night of the shooting.

{¶ 31} According to Shayna Gray ("Gray"), a forensic scientist in the Trace Evidence Unit of the Cuyahoga County Medical Examiner's Office, gunshot residue found on Debo's hands indicated either he discharged a firearm; he was in the vicinity of a firearm when it was discharged; or some other transfer occurred that resulted in residue particles on his hands. Gray also testified to the presence of gunshot residue on the camouflage jacket and hooded sweatshirt that Bebee dropped as he exited Aja's apartment.

{¶ 32} Gray further testified that Debo was shot in the right shoulder from a distance of greater than five feet; in the chest by a shooter standing at least three feet away; and in the lower back by a firearm that was either at a distance greater than five feet or there was an intervening object. Gray was unable to state the distance the shooter stood from Debo when firing the remaining bullets.

{¶ 33} Dr. Joseph Felo, the Cuyahoga County chief deputy medical examiner, testified that Debo died from multiple gunshots wounds and his death was ruled a homicide.

Jury Verdict and Sentencing

{¶ 34} On February 15, 2024, the jury returned guilty verdicts on Count 2, murder-UF, in violation of R.C. 2903.02(A); Count 3, murder-UF in violation of R.C. 2903.02(B); Counts 4 and 7, felonious assault in violation of R.C. 2903.11(A)(1); Counts 5 and 8, felonious assault in violation of R.C. 2903.11(A)(2) — each with one- and three-year firearm specifications. The trial court found Bebee guilty of Count 9, having weapons while under disability in violation of R.C. 2923.13(A)(2). The jury found Bebee not guilty on Count 1, aggravated murder-UF in violation of R.C. 2903.01(A), and Count 6, attempted murder in violation of R.C. 2923.02/2903.02(A).

{¶ 35} The trial court sentenced Bebee on February 20, 2024. The parties agreed that (1) all one- and three-year specifications merged in each count into the three-year firearm specification; (2) Counts 2, 3, 4, and 5 merged for the purpose of sentencing, excluding the firearm specifications, and the State elected to sentence on Count 2; and (3) Counts 7 and 8 merged, and the State elected to sentence on Count 8. The court sentenced Bebee to life in prison with the possibility of parole after 15 years on Count 2; a minimum of seven years and a maximum of 10 and one-half years on Count 8; and 24 months on Count 9. Counts 8 and 9 were ordered to run concurrently to Count 2, for a total sentence of life in prison with the possibility of parole after 24 years.

(*State v. BeBee*, 2024 WL 5466645, at *1-6 (Ohio Ct. App., Dec. 19, 2024)).

## III. State Court History[2]

### I. State Conviction

[2] Bebee's motion was filed at the same time of his Petition and the Respondent has not been required to file the Return of Writ or state court record. Therefore, the state court history outlined comes as a result of the Court taking judicial notice of state court dockets. *See Kirk v. Ivey*, 2020 WL 349662, at *1 (N.D. Ohio, 2020) citing *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 455 (N.D. Ohio 2012) (explaining that a federal court may take judicial notice of an Ohio state court case docket if the plaintiffs refer to the Ohio state court case in their complaint).

On January 23, 2023, a grand jury indicted Bebee with the following nine counts: Count One - Aggravated Murder, an unspecified felony in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A); Count Two - Murder, an unspecified felony in violation of O.R.C. § 2903.02(A); Count Three - Murder, an unspecified felony in violation of O.R.C. § 2903.02(B); Count Four - Felonious Assault, a second-degree felony in violation of O.R.C. § 2903.11(A)(1); Count Five - Felonious Assault, a second-degree felony in violation of O.R.C. § 2903.11(A)(2).; Count Six - Attempted Murder, a first-degree felony in violation of O.R.C. § 2923.02 / 2903.02(A); Count Seven - Felonious Assault, a second-degree felony in violation of O.R.C. § 2903.11(A)(1); Count Eight - Felonious Assault, a second-degree felony in violation of O.R.C. § 2903.11(A)(2); Count Nine - Having Weapons Under Disability, a third-degree felony in violation of O.R.C. § 2913.13(A)(2). Indicted Original on 01/23/2023, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Ohio Jan. 23, 2023), https://cpdocket.cp.cuyahogacounty.gov/CR_CaseInformation_Docket.aspx?q=S0uky4QxOqtVQvsMU4ouv6p09hP9UkwHsTJOBPPe8fM1.[3] Counts One through Eight each included firearm specifications pursuant to O.R.C. § 2941.141(A) and O.R.C. § 2941.145(A). *Id.*

A January 27, 2023 journal entry demonstrates that the court appointed counsel and Bebee pled not guilty to the charges in the indictment. JE on 01/27/2023, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Jan. 23, 2023).

On February 9, 2024, Bebee waived his right to a jury trial on Count Nine - Having Weapons Under Disability. JE of 02/09/2024, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Feb. 09, 2023). On February 15, 2024, a jury found Bebee guilty of two counts of murder

[3] For ease of reading, the web link will be omitted from subsequent citations if each proceeding cited document is found on the same docket.

with firearm specifications and four counts of felonious assault with firearm specifications. JE of 02/15/2024, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Feb. 15, 2024). On the same day, the trial court found Bebee guilty of one count of having weapons under disability. *Id.* Bebee was sentenced to an aggregate prison term of life with the possibility of parole after 24 years on February 21, 2024. JE of 02/21/2024, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Feb. 21, 2024).

## II. Direct Appeal

Bebee filed a notice of appeal to Ohio's Eighth District Court of Appeals on March 18, 2024. Notice of Appeal, *State of Ohio v. Lajaun Bebee*, No. CA-24-113734 (Mar. 18, 2024), https://cpdocket.cp.cuyahogacounty.gov/COA_CaseInformation_Docket.aspx?q=3Zu_YfkXK48 3ztEMvTezlmmPcB8XnWkKkUS8blto8Ec1. Bebee filed his appellate brief on July 9, 2024. Appellant's Brief, *State of Ohio v. Lajaun Bebee*, No. CA-24-113734 (Jul. 09, 2024). The state of Ohio filed its brief in opposition on August 19, 2024. Appellee's Brief, *State of Ohio v. Lajaun Bebee*, No. CA-24-113734 (Aug. 19, 2024).

On December 19, 2024, the appellate court affirmed Bebee's conviction and sentence. JE on 12/19/2024, *State of Ohio v. Lajaun Bebee*, No. CA-24-113734 (Dec. 19, 2024). Bebee filed a notice of appeal and a motion for a delayed appeal with the Ohio Supreme Court on March 11, 2025. Notice of Appeal, *State of Ohio v. Lajaun Bebee*, No. 2025-0350 (Mar. 11, 2025), https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2025/0350. The Ohio Supreme Court denied the motion on May 13, 2025. Denied and cause dismissed, *State of Ohio v. Lajaun Bebee*, No. 2025-0350 (May 13, 2025).

On March 6, 2025, Bebee filed a motion to reopen the direct appeal in Ohio's Eighth District Court pursuant to Ohio Rule of Appellate Procedure 26(B) on the grounds of ineffective

assistance of appellate counsel. Motion to Reopen Direct Appeal, *State of Ohio v. Lajaun Bebee*, No. CA-24-113734 (Mar. 06, 2025), https://cpdocket.cp.cuyahogacounty.gov/COA_CaseInformation_Docket.aspx?q=3Zu_YfkXK483ztEMvTezlmmPcB8XnWkKkUS8blto8Ec1. The appellate court declined to reopen Bebee's appeal on April 25, 2025. JE on 04/25/2025, *State of Ohio v. Lajaun Bebee*, No. CA-24-113734 (Apr. 25, 2025).

## III. Post Conviction Proceedings

Bebee filed a petition to vacate or set aside judgment of conviction or sentence, a motion for appointment of counsel, and a motion for expert assistance on April 23, 2025 raising 21 alleged constitutional claims. Petition to Vacate or Set Aide Judgment of Conviction or Sentence, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Apr. 23, 2025), https://cpdocket.cp.cuyahogacounty.gov/CR_CaseInformation_Docket.aspx?q=S0uky4QxOqtVQvsMU4ouv6nzzlbu0t3a1XF7-TJ58kw1.

Bebee filed another petition to vacate or set aside sentence on May 27, 2025. Petition to Vacate or Set Aide Judgment of Conviction or Sentence, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (May 27, 2025). The trial court denied the Bebee's May 27, 2025 petition for post-conviction relief on June 5, 2025.[4] JE on 6/5/2025, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Jun. 5, 2025). On July 3, 2025, Bebee filed a notice of appeal to Ohio's Eighth District. Notice of Appeal, *State of Ohio v. Lajaun Bebee*, No. CA-25-115288 (Jul. 3, 2025), https://cpdocket.cp.cuyahogacounty.gov/COA_CaseInformation_Docket.aspx?q=Il5mc23ff9nKVGG20HOecAce5wv_8dhsKFeb_USxCAM1. After the matter was fully briefed, on March 26,

[4] I note that at this time, only the May 27, 2025 petition was ruled on. No action was taken with respect to the April 23, 2025 petition.

2026, the appellate court reversed and remanded Bebee's petition to vacate or set aside judgment of conviction or sentence because the state trial court failed to issue findings of fact and conclusions of law when denying the petition. JE on 03/26/2025, *State of Ohio v. Lajaun Bebee*, No. CA-25-115288 (Mar. 26, 2025).

On April 27, 2026, the trial court denied Bebee's April 23, 2025 and May 27, 2025 petitions to vacate or set aside judgment of conviction or sentence. JE on 04/27/2026, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Apr. 27, 2026), https://cpdocket.cp.cuyahogacounty.gov/CR_CaseInformation_Docket.aspx?q=S0uky4QxOqtVQvsMU4ouv6nzzlbu0t3a1XF7-TJ58kw1. Bebee filed a notice of appeal to Ohio's Eighth District on May 19, 2026. Notice of Appeal, *State of Ohio v. Lajaun Bebee*, No. CA-26-116505 (May 19, 2026), https://cpdocket.cp.cuyahogacounty.gov/COA_CaseInformation_Docket.aspx?q=Rfp7f0LN5DtavG0RLpyZU0yxAlOOC2zYV_JAiptBoCQ1. This appeal was consolidated for briefing and decision with another a separate appeal Bebee filed related to post-conviction matters. JE on 07/06/2026, *State of Ohio v. Lajaun Bebee*, No. CA-26-116505 (May 19, 2026). The appeal is currently pending before the appellate court.[5]

## IV. Federal Habeas Corpus Petition

In his Petition for a writ of habeas corpus, Bebee raises the following 27 grounds for relief:[6]

> **Ground One:**
> The Appellant's conviction cannot be upheld as it is against the manifest weight of the evidence as appellate clearly acted in self-defense.

[5] As of August 12, 2026, the matter has not yet been briefed, heard, or decided.

[6] The format of Bebee's grounds for relief and supporting facts have been cleaned up for ease of reading, however all substantive statements are quoted verbatim.

**Supporting facts:**
All evidence that was photographed was collected except bullet defects that were left on the scene in which would have an adverse reaction in the appellant's case had the bullet defects been collected and examined by the firearm and tools examiner. There is witness testimony stating the decedent started the affray once the decedent began to beat on a woman by the name of Kelsey Lee. The decedent had gunshot residue on his hands that couldn't have come from the appellant because the appellant's was three feet or further away as assessed and determined by expert testimony.

**Ground Two:**
The trial court erred by failing to advise the appellant of his fifth amendment right to remain silent prior to his testimony.

**Supporting facts:**
Appellant's representation told the Appellant that if the appellant was to take a self-defense claim the appellant would have to take the stand.

**Ground Three:**
The trial court erred by giving the flight instruction to the jury.

**Supporting facts:**
The appellant was apprehended in a place where he received mail and he did not try to hide in the residence. Appellant did not leave the country or the state to flee. The appellant was one a person of interest; he was not charged or indicted for this crime and he was unaware that the authorities wanted to speak with him. Detectives never tried to speak with the appellant at other addresses he had on record. The petitioner had violated probation and was avoiding police because of the probation violation on not reporting to his probation officer.

**Ground Four:**
Trial court erred by allowing a reckless investigation to be manufactured where evidence was photographed but was not brought from the scene and physically presented at trial.
**Supporting facts:**
There is evidence that detective Lentz, detective Prock, and James Kooser admit to photographing the three (3) bullet defects that were on the alleged crime scene, and one (1) defect in the ceiling of the unit below apartment of where the alleged crime took place. Defects were never cut out to be further investigated to see what caliber gun caused the defects. . . . Zone cars went to other apartments to check for corresponding defects in other units but there weren't any. . . . There was a defect found in the apartment ceiling below the apartment of the alleged crime scene. However, no bullet hole was ever found in the carpet or floor of the apartment so the assumed defect location is unknown. . . . Even after learning that two guns were fired Detective Prock states he was not sent back to the unit to cut out and collect defects, check the caliber of the defects, and/or to pull up the carpet. . . . The defects

in the drywall were supposed to be cut out and presented at court, and the inside of the wall was supposed to be examined for bullets. This is a plain error under criminal rule 52 because the bullet defects in the walls were not opened to further investigate and never physically presented at court. This is a due process violation because of police conducting a reckless investigation that led to prosecutorial misconduct die the collusion of fraud upon the court due to the police and the state withholding exculpatory evidence which the judge allowed because physical evidence of the bullet defects was withheld especially giving the fact the decedent had Gunshot residue on his hands and all wounds he received were over 3 feet away. James Kooser who was stipulated as an expert in firearms and tool mark examining state that crime scene could've cut the defects out to bring the defects to him so he could examine to see what caliber caused the defect and the then get the bullet to see exactly what firearm the bullet came from especially since there was no corresponding exit hole and the defects could tell you what caliber cased the defects had it been taken to James Kooser to be examined. . . . Detective Prock states that crime scene never searched under the refrigerator or stove for possible .22 shell casings, so shell casings could have been under those kitchen appliances. . . . Detective Lentz claim to not even try to see what caliber caused these defects but says it was possible to see what caliber cause the defect. . . . Cutting out the defects would have given the detectives opportunity to see what kind of bullets are in the wall but since those defects were not opened nobody knows and the bullets are still in the wall today.

**Ground Five:**
Trial court erred by allowing video evidence to be presented at trial after it was edited and muted on certain parts where the petitioner asked to recant his statement which is a clear violation of the petitioner's Miranda rights.

**Supporting facts:**
There is evidence on the record during trial of the court using an interrogation video od the appellant where certain parts were muted and the parts that were muted was when the appellant was asking to recant his statement. This is a clear violation of Petitioner's Miranda rights to revoke his statement and allow the petitioner to speak to detectives with attorney if the petitioner wanted to. Had all parts of the video played in court the trial court would see that the petitioner revoked his waiver and was asserting his right to remain silent while not having representation.

**Ground Six:**
Trial counsel was ineffective for allowing prosecutorial misconduct due to conspiring self-incrimination upon petitioner because interrogation video was presented at trial after being edited and muted only on parts when petitioner asked to recant his statement.

**Supporting facts:**
Petitioner's 5th, 6th, and 14th amendment was violated due to the prosecution and trial defense counsel conspiring self-incrimination upon petitioner because

interrogation video was presented at trial after being edited and muted only on parts when petitioner asked to recant his statement. The prosecutor colluded fraud upon the court and was aided by the judge and trial defense counsel. Petitioner's U.S. Constitution was violated because trial defense counsel did not file a motion to suppress interrogation video of petitioner that was used at trial that was edited to mute when defendant asked to recant his statement and presented at trial after being edited and muted as agreed to by both parties which is stated on the record. The only parts of the video that were muted was when the petitioner asked to recant his statement and to speak with his attorney to detectives.

**Ground Seven:**
Appellant counsel refused to file proper errs even after petitioner wrote counsel and advised counsel to do so.

**Supporting facts:**
Due process of petitioner's 5th, 6th, 14th, amendment of the U.S. constitution was violated due to the petitioner's appellant counsel refusing and told him he could not try to file a supplemental brief because it would be denied due to no hybrid representation. Petitioner wrote letters to appellant counsel in regards to filing other errors on direct appeal due to the local rules of the eighth district court of appeals which does not allow hybrid representation. There will be a letter attached as Exhibit V-1 to show the petitioner's appellant counsel refusing to file errors on direct appeal and refusing to file a supplemental brief.

**Ground Eight:**
Trial court erred by allowing prosecution to use a witness who admits statement was not true.

**Supporting Facts:**
U.S. constitution was violated due to the state prosecution coerced, threatened, and forced witness Aja Ferrell to make statement on the witness stand that wasn't true in court. The witness Aja Ferrell did not want to come to court to testify and when she did she said she did not see anything which was because the prosecutor threatened to take her kids if she did not testify on behalf of the state. She even admits her statement during interrogation with detectives in November of 2022 wasn't consistent with her testimony on the witness stand on February of 2024. . . .

**Ground Nine:**
Trial court erred by allowing evidence being withheld because DNA was not collected from witnessed and shell casings were not tested for DNA.

**Supporting facts:**
U.S. constitution was violated due to evidence being withheld prior to and during trial due to DNA not being collected from witnesses and shell casings not being tested for DNA. Detectives did not take DNA from all people who were on the scene and shell casings were not tested to see if there was any DNA found. . . .

Evidence could have been tampered with along with other evidence being taken from the scene or tampered with. Had DNA been collected from all persons it would have showed that evidence had or had not been tampered with by people who left or stayed on the scene. There are shell casings that were collected that did not have petitioner's DNA on the evidence but there was other unknown DNA found on the shell casings. Trace examiner reports, physical evidence, expert reports, and other items reasonably necessary to show that there was DNA from multiple people on the evidence presented at court but the court did not conclude who the DNA was from on the scene of the alleged crime before, during, or after what had occurred. All evidence and exhibits are being withheld from petitioner.

**Ground Ten:**
Trial defense counsel was ineffective for not objecting the incomplete jury instruction of self-defense, defense of another or defense of a residence.

**Supporting facts:**
U.S. constitution was violated due ineffective assistance of counsel and due to the undermining of the jury instruction that was supposed to be given at trial but was absent of the record and no objections being made by defense attorneys on instructions that were incomplete when applied during trial. Trial defense counsel did not object to the jury instruction of self-defense at trial which violated the petitioner's due process clause. Trial court's instruction only on self-defense, defense of another/others, and/or defense of a residence under the castle doctrine §R.C. 2901.09 is plain error. Ohio jury instruction 421.21 which became effective 4-6-2021 and revised 3-23-24 was violated. R.C. 2901.09 abolishes the duty to retreat for any person who was in a place where he/she lawfully had a right to be when he/she used force in self-defense, defense of another/others, and/or defense of a residence according to OJI 421.21 due to the petitioner being lawfully allowed to be in the residence. There was not supposed to be a question of whether or not the petitioner violated a duty to retreat. Error is preserved for appeal when the defendant or representation of defendant on appeal objects in accordance with the second paragraph of Ohio Rules Criminal Procedure 30(A) whether or not there has been a proffer of written jury instruction in accordance with the first paragraph. There is no hybrid representation allowed by the eighth district court of appeals so defendant could not file appeal brief to make objection; appeal counsel could make an objection to point out the error but failed to do so which makes the appeal counsel ineffective. Petitioner was denied his 6th amendment U.S. constitutional right to effective assistance of counsel when trial defense counsel failed to object to court's incomplete instruction on self-defense and did not request a jury instruction under the castle doctrine §R.C. 2901.09(B). Trial court erred in failing to instruct jury on the castle doctrine, §R.C. 2901.09(B), as an exception to the duty to retreat in self-defense and counsel's conduct fell below an objective standard of reasonableness when the court gave an incomplete instruction. . . . Trial court erred in failing to issue a Castle Doctrine because the absence of this instruction undermined defendant's right to due process of law which is plain error, a violation of Crim.R.52.

**Ground Eleven:**
Trial court erred by not sustaining objection of flight instruction.

**Supporting facts:**
U.S. constitution was violated due to the objection of the jury instruction not being sustained by trial judge when the flight instruction was administered. Trial defense counsel was ineffective also by not requesting the body cam footage on the day the petitioner was arrested by U.S[.] Marshalls. There should have not been a flight instruction because petitioner never fled from Ohio, nor did he flee from the county of Cuyahoga. . . . This constitutes a structural error. He was found in a residence where he was a resident and receiving mail which was 2303 E. 95th street, Cleveland, Ohio 44106. The door was opened for U.S. Marshalls. He did not try to hide from the U.S. Marshalls upon them entering the home when they called out to see if extra people were in the house, the petitioner surrendered himself which can be viewed on the U.S[.] Marshalls body camera which was not admitted to court as evidence which would show petitioner did not avoid apprehension, proving the flight instruction to be plain error. Petitioner had ample opportunity to flee the county or the state. Had the body camera footage from the U.S. Marshalls body camera been played at court it would show that the petitioner was willful in surrendering himself to the U.S. Marshalls but this video was withheld from evidence and was never admitted to court or asked for by trial defense counsel.

**Ground Twelve:**
Counsel was ineffective for not objection to prosecutors lies during closing arguments.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of counsel. Counsel did not raise a reasonable argument while giving closing arguments by not bringing up expert witness testimony that supported preponderances of self-defense, defense of another/other, and/or defense of a residence; Shows the trial defense counsel's failure to bring forward evidence presented. Dr. Joseph Felo who was deemed an expert witness, a doctor who handles autopsies says when checking the deceased person's gunshot wounds for gunpowder smoke or soot or unburnt gunpowder that there was none visible or any gunshot wounds which through his interpretation means that any gunshot residue found on deceased was not from a gun that caused the wounds of the deceased. . . . He states that in order for the deceased person to have gunshot residue on his gunshot wounds that the shooter would have had to be within a foot and a half distant. . . . There is expert witness testimony from trace examiner Shayna Gray stating she collected gunshot residue from the decedent's hand which could only be from him shooting a gun. . . . Trial defense counsel didn't even raise the issue of the prosecutor saying petitioner caused the defect in the carpet during closing arguments when there was never a bullet defect found in the carpet which was collusion of fraud upon the court. . . . Defect was only found in

the ceiling of the apartment that was under where the crime scene gathered other evidence which was assumed the exit of the defect.

**Ground Thirteen:**
Counsel was ineffective for not objecting to the preemptive sentence placed on appellant.

**Supporting facts:**
U.S. constitution was violated; Section 10, Article 1, Ohio constitution was violated due ineffective assistance of counsel. Trial judge gave defendant preemptive, vindictive sentence stating that if life sentence is to be reversed defendant will be serving 7-10 and a half year sentence and counsel failed to object this sentence administered by the judge. . . . This constitutes plain error.

**Ground Fourteen:**
Trial counsel was ineffective for conspiring self-incrimination upon appellant.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of counsel and trial defense counsel conspiring self-incrimination upon petitioner. As a violation to petitioner's 5th amendment U.S. constitutional right defense counsel told petitioner that there was no choice but to take the stand to affirm defense of self-defense, defense of another, and defense of one's residence. While prepping petitioner trial defense counsel coerced defendant into lying on the stand to corroborate false, fabricated witnesses' testimony to make appellant's story sound more believable due to the fact that petitioner committed crimes under duress before leaving the scene. Those elements of the case do not prove guilt beyond a reasonable doubt of murder especially considering the fact that I received a jury instruction of the self-defense instruction. Defense counsel told me not to bring up me and Kelsi Lee's communication about removing evidence from alleged crime scene in reference to the gun I picked up before leaving. Trial defense counsel told me not to speak of seeing Kelsi Lee pick up shell casings upon exiting and seeing a puddle of blood on the landing at top of stairs by living room and kitchen. There is an affidavit typed by Mr. Bebee attached to the original post-conviction motion.

**Ground Fifteen:**
Counsel was ineffective for not objecting to witness's testimony and witness not able to identify accused.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of counsel. During sentencing petitioner may be convicted of only one count of the same charges to an alleged victim but he was convicted of murder twice for the same victim which is a violation of R.C. §2941.25. Defense trial counsel also did not object to the prosecutor's oral motion given off the record for court to issue a warrant to arrest witness Jordan Horne who had no pending charges or indictment, nor was he a

person of interest. . . . Trial defense counsel did not object or attempt to impeach witness Jordan Horne claimed to have not seen the alleged shooter in open court during his testimony on the witness stand on February 12th, 2024. He identified someone while giving a statement during interrogation with detectives on November 9th, 2022 which was recorded on video and is being withheld with discovery. However, witness Jordan Horn could not identify the alleged person during open court which is a violation of the 6th amendment of the U.S. constitutional right of the defendant. . . Petitioner told appellate representation to state this error. Appellant counsel even said she was not going to bring this error up for a number of reasons but says the main reason was because if someone did not identify a defendant in court could be advantageous to the defense which she stated in a letter she sent to petitioner.

**Ground Sixteen:**
Counsel was ineffective for violating appellant's speedy trial rights with no good cause.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of counsel and violation of speedy trial rights. Defense counsel also violated petitioner's speedy trial rights for filing over 20 continuances tolling the petitioner 392 days in the county jail without filing any motions and prejudicing the defendant as a result of the delay and there was no reason for such delay and no good cause. This is evidence counsel was ineffective and was aiding and assisting prosecution. Petitioner had a right to a fast and speedy trial to be held in 90 days due to no capiases being filed by trial judge regarding petitioner's probation which meant that petitioner's probation expired March 2023. No speedy trial waiver was ever signed by defendant. The defendant served 392 days in lieu of bail in Cuyahoga county jail which also entitles a triple count provision. This is a violation of R.C. 2945.72. Trial defense counsel did not file a motion in limine to exclude misleading evidence due to petitioner being under duress. Trial counsel did not file a motion to compel production of the search warrant affidavit and to unseal it. Trial defense counsel did not file motion for protective order prohibiting unconstitutional prosecutorial access to the defendant's recorded and stored communications. Trial defense counsel never filed motion on the record or off the record that I be present at all proceedings after defendant's request and false promises were made by appointed attorneys that defense counsel would make sure. Defense counsel never requested the record of the deceased showing he has a violent history against women on multiple occasions. There was never a preliminary hearing held before petitioner's pretrial proceedings. Trial defense counsel never requested evidentiary hearing after they told petitioner one would be held before trial. Court docket from case number CR-21-656066-A shows when the petitioner was sentenced for probation and how much time petitioner was sentence to be on probation. Court docket from case number CR-23-677765-A provides the information that capiases were not filed to extend petitioner's probation; judge no longer had jurisdiction to rule over probation due to its expiration. CR-23-677765-A also shows how counsel was ineffective by

failing to file motions on petitioner's behalf and the undue delayed continuances made by trial defense counsel were for no good cause.

**Ground Seventeen:**
Counsel was ineffective for failing to use private investigator to bring forward evidence that was left on the scene.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of counsel. Defense counsel did not use the private investigator in defendant's case that they had him meet with. The private investigator could've gathered evidence from alleged crime scene and witnesses to help petitioner with case. Court docket CR-23-677765-A shows motion for private investigator was filed 02/06/2023 and was granted 02/07/2023 which is the evidence investigator was hired. The table of contents of the petitioner's trial court transcripts will show the private investigator did not testify nor bring forward any evidence at court on petitioner's behalf especially regarding the bullets that were never recovered from the walls of the apartment which would prove decedent fired his weapon.

**Ground Eighteen:**
Appellant counsel was ineffective for failing to file proper errors and not filing a reply brief knowing there is no hybrid representation so appellant would not be able to raise issues himself on direct appeal.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of appellant counsel. It is evident that appellate attorney conspired with appellee for appellant to lose appeal by not filing proper errors and not filing a reply brief to the opposing brief of the appellee which is clear ineffective assistance of counsel. Court docket Appeal no. CA-24-113734 from the eighth district court of appeals will be presented to show that appellate counsel did not file reply brief which is why petitioner lost appeal due to lack effort by appellate counsel.

**Ground Nineteen:**
Trial and appellant counsel was ineffective for failing to object to and raise error of fault instruction.

**Supporting facts:**
U.S. constitution was violated due to ineffective assistance of trial defense counsel and appellant counsel. Petitioner's conviction for murder should be reversed because the jury instruction was unreasonably broad since, under the second paragraph of the "fault" instruction regarding self-defense, defense of another/other, and defense of a residence, the jury could have found petitioner at fault without having engaged in any aggressive or confrontational behavior. . . . Defense counsel failed to object to the instruction which is clear ineffective assistance of counsel which constitutes plain error. Appellant counsel failed to raise

error for ineffective assistance of trial defense counsel failing to raise error of the instruction itself which is ineffective assistance of appellate counsel which is violation of the petitioner's 6th amendment right and due process.

**Ground Twenty:**
Prosecutorial misconduct occurred by using false testimony premised off a reckless investigation.

**Supporting facts:**
U.S. constitution was violated; Section 10, Article 1, Ohio constitution was violated due to ineffective assistance of trial defense counsel. Prosecutors colluded fraud upon the court by allowing false and fabricated testimony premised off of a reckless investigation to be presented by Detective Lentz. Detective Lentz gives false and fabricated testimony to collude fraud upon the court by stating that the RTCC (Real Time Camera Center) was not able to identify the vehicles for crime scene department, yet this video evidence was not presented to court which means either crime scene detectives never made an effort to get the footage or they failed to present the video showing they weren't able to see the vehicles that left the scene which proves exculpatory evidence was withheld. . . . There is not even proof that crime scene detectives spoke with RTCC (Real Time Camera Center). Detective Lentz states that efforts were made to call and locate the petitioner, yet there is no proof of this. . . . Detective Lentz admitted to going through petitioner's phone, yet no warrant for that action was never presented at court. Evidence was deleted while petitioner's appeal was still in progress which is a violation of petitioner's due process.

**Ground Twenty-One:**
Counsel was ineffective for failing to object prosecutor's collusion of fraud upon the court.

Supporting facts:
U.S. constitution was violated due to ineffective assistance of counsel by failing to object to prosecutor's collusion of fraud upon the court. Prosecutor colluded fraud upon the court by presenting a reckless investigation upon the court in which exculpatory evidence was withheld. State's prosecution went on to state petitioner stood over and shot decedent that caused the defect in the floor of the apartment without actual proof or an actual defect being found in the floor. . . . Even after the doctor states that in order for the deceased person to have gunshot residue on his gunshot wounds that the shooter would have had to be within a foot and a half distant. . . . It is stated in the judgement of the direct appeal that the wounds of the decedent were 3 feet away or greater. Prosecutor goes on to state that petitioner executed the decedent in the apartment. . . . The decedent was pronounced dead outside. The defects were never even cut out to be presented physically at court, never investigated to see what caliber caused the defect after detectives said it was possible, and/or never opened to see if a bullet was in the defect.

**Ground Twenty-Two:**
Trial court erred by failing to give proper self-defense jury instruction that was supposed to include the castle doctrine.

**Supporting Facts:**
Petitioner's due process 5th and 14th amendment of the U.S. constitution was violated. The fact that multiple witnesses say the decedent was beating on a woman in the living room and then he went into the kitchen to attack petitioner with a gun is evidence that this is self-defense, defense of another, and defense of one's residence. Petitioner was granted a self-defense instruction, however, trial court committed reversible and plain error by not giving self-defense instruction under the castle doctrine pursuant to R.C. 2901.09. A trial may not refuse a requested instruction if it is a "correct pertinent statement of the law" and "appropriate to the facts." The trial court cannot give a jury instruction on the affirmative defense of self-defense if there is insufficient evidence. There are 3 preponderances of evidence to affirm defense of self-defense, defense of another and defense of one's residence. The first element is the defendant did not violate any duty to retreat because he was lawfully allowed to be at residence as stated by witness Aja Ferrell whose residence it was rode in a car with. . . . The next element is that the defendant was not at fault in creating the situation giving rise to the affray. The fact that multiple witnesses say the decedent was beating on a woman by the name of Kelsey Lee in the living room proves decedent started the affray which is evidence this is self-defense, defense of another, and defense of one's residence. First, Kelsey Lee says decedent started pushing her and beating on her. . . . Next witness by the name of Shalena Stokes states she saw the start of the affray was the decedent beating on Kelsey Lee. . . . The third witness by the name of Jordan Horn states that he saw decedent started the affray and was repeated slapping Kelsey Lee. . . . Lastly, the petitioner states seeing the decedent beating on Kelsey Lee in the living room before the decedent approach the petitioner in the kitchen with a firearm in his hand. . . . Immediately after decedent beats Kelsey Lee, he then goes into the kitchen to confront the defendant with a gun in his hand and shot at petitioner, petitioner's cousin, and witness Shalena Stokes. Decedent was solely responsible for shooting witness Shalena Stokes. Proof that petitioner did not shoot witness Shalena Stokes is based off of her testimony and the video presented in court of witnesses leaving scene and petitioner and witness Shalena Stokes were the first people out of the housing unit which shows there was no possible way petitioner shot her. . . . There is expert witness testimony from trace examiner Shayna Gray stating she collected gunshot residue from the hands of the decedent which could only be from him shooting a gun. . . . Dr. Felo states that since there was not gunshot residue on the deceased person's gunshot wounds the gunshot residue on the deceased person did not come from a gun that shot the deceased. . . . The third and final element is that defendant had a good faith belief there was an imminent danger of death or great bodily harm and that his only means of escape from such danger was by use of force. Corroboration testimony from expert and material witnesses shows that the petitioner's case was self-defense, defense of another, and defense of one's residence due to all the preponderances being met. The deceased started the affray

by beating on a woman which is the first preponderance of evidence then approaching petitioner with a gun. Joseph Felo who was stipulated an expert as a forensic pathologist and the chief deputy medical examiner for the Cuyahoga county medical examiner's office decedent's gunshot wounds for gunpowder smoke or soot or unburnt gunpowder that there was none visible on any gunshot wounds. This basically means that any gunshot residue found on decedent was not from a gun that caused the wounds of the deceased. . . . He states that in order for the decedent to have gunshot residue in his wounds that the shooter has to be within a foot and a half distant and petitioner was not. . . . Lastly, the petitioner did not use excessive force to repel the decedent due to the events occurring in an upstairs apartment and decedent made it outside on his own and was pronounced dead outside.

**Ground Twenty-Three:**
Counsel was ineffective for failing to give appellant motion of discovery.

**Supporting facts:**
Petitioner's due process 5th, 6th, and 14TH amendment of the U.S. constitution was violated due to ineffective assistance of counsel when trial defense counsel withheld discovery and bill of particulars from petitioner. Petitioner did not receive any forms of the petitioner's motion of discovery that were presented during trial or before trial commenced; the autopsy report, the trace examiner report, the police report, the witness statements, the ballistics on the firearms, the pictures from the crime scene. Trial defense counsel made promises to file a motion to remove counsel only so that the petitioner could receive the motion of discovery while in Cuyahoga county jail but the motion was never filed. The petitioner still has yet to receive discovery of evidence and has sent letters to previous trial defense counsel and has been ignored. Rule 1.16(d) which corresponds to DR 2-11 0(A)(2) and also requires withdrawing lawyer to promptly return client papers and property to client. "Client papers and property", are defined as including correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert reports, and other items reasonably necessary to the client's representation. This is also a violation of criminal rule 16. Trial defense counsel even promised to file a motion to remove counsel only from discovery so defendant could receive motion of discovery and bill of particulars but the motion was never filed. See court docket to check absence from all journal entries. There is a copy of the letter that was sent to trial defense counsel regarding the violation of the Ohio rules of professional conduct which became effective February 1st, 2007; as amended effective May 2nd, 2017.

**Ground Twenty-Four:**
Trial court erred by allowing prosecutor to commit Napue violation.

**Supporting facts:**
Due process of petitioner's 5th, 6th, and 14th amendment of the U.S. constitution was violated due to confrontation of an adverse witness. The prosecutor colluded fraud

upon the court. Prosecutorial misconduct took place due to the occurrence of a violation under Napue. Prosecutor knew of Aja Ferrell's false, fabricated testimony committed on the witness stand due to her testimony being different from her original statement she gave during interrogation with detectives in November of 2022. She even admits her statement during interrogation with detectives in November of 2022 was completely different from her testimony on the witness stand on February of 2024. . . . Prosecutor knew of false, fabricated testimony and failed to correct the testimony of the state's primary witness Jordan Horn which had an adverse effect on the defendant's trial. On November 9th, 2022 this was the only witness who identified the petitioner during interrogation with detectives and says he saw the petitioner shoot a gun. Witness Jordan Horn tells a different story on the stand February 12th, 2024 which the prosecutor was well aware of the false, fabricated testimony. On February 12th, 2024 witness Jordan Horn states he saw a male grab a gun from the decedent after shooting the decedent. . . . Witness Jordan Horn never said these things on November 9th, 2022 while talking to detectives; He actually asks the detectives if they found the decedent with a gun. The original statement is being withheld with discovery away from petitioner. Witness Jordan Horne even got on the witness stand during trial and said he did not see who he accused in the courtroom. . . . Trial defense counsel never presented the exhibits of the statements of witness Jordan Horne and witness Aja Ferrell in court to show prosecutor committed Napue violation due to the fact of the prosecutor knowingly used wholly fabricated testimony and failed to correct what he subsequently learned was false testimony and that the falsehood was material. . . . The original statements and interrogation videos that the petitioner never received from counsel are being withheld along with the rest of the discovery which is why that evidence is unable to be attached as exhibit.

**Ground Twenty-Five:**
Counsel was ineffective by failing to assist with compulsory access to a witness.

**Supporting facts:**
Appellant's U.S. Constitution was violated due to ineffective assistance of counsel because trial defense counsel did not try to assist with compulsory access to a witness who could have possibly made a difference in the petitioner's case. Trial Defense counsel refused to subpoena a witness that left the scene of the house on camera after the alleged crime on the petitioner's behalf after defense counsel told the petitioner they would do so after having knowledge that the person who left returned and got into a vehicle to leave the scene and there are cameras seeing the individual pull up and come into the apartment. There is no excuse that trial defense counsel or the state was not able to get this witness. There is video evidence of a seventh person who leaves the scene who was never apprehended by the police nor questioned by detectives. . . . Video is being withheld with discovery from defendant. A security officer that testified at the petitioner's trial states that he saw an additional potential suspect leave the crime scene. . . . Witness Aja Ferrell states there an extra person was at her home in her testimony. . . . Witness Jordan Horn states that an extra person was at the home of Aja Ferrell while the events took

> place. . . . Detective Lentz states that he sees another person leave out the apartment who was never talked with by the detectives. . . . Petitioner states another person who was like a family member was on the scene with him before everybody left during petitioner's testimony but he lied about the witness's name. . . . Had witness known any trial dates witness could have made a difference in petitioner's case. Statements given at court from detective Lentz, security officer and all other witnesses state that an additional person left the scene who was never apprehended to be spoken to by police. There is an affidavit of verity of the actual witness who was on the scene by the name of Jiare Clark which is newly discovered evidence that has been sent with a Crim.R.33(B) motion.
>
> **Ground Twenty-Six:**
> Trial court erred by not giving an instruction on a lesser offense of manslaughter due to the instruction of self-defense being administered during petitioner's trial.
>
> **Supporting facts:**
> Due process of petitioner's 5th, 6th, and 14th amendment of the U.S. constitution was violated due to the trial court not giving an instruction on a lesser offense of manslaughter due to the instruction of self-defense being administered during petitioner's trial.
>
> **Ground Twenty-Seven:**
> U.S. constitution was violated due to the trial defense counsel not requesting that trial court give an instruction on a lesser offense of manslaughter due to the instruction of self-defense being administered during petitioner's trial.
>
> **Supporting facts:**
> Due process of petitioner's 5th, 6th, and 14th amendment of the U.S. constitution was violated due to the trial defense counsel not requesting that trial court give an instruction on a lesser offense of manslaughter due to the instruction of self-defense being administered during petitioner's trial.

(ECF Doc. 1, pp. 7-24).

## V. Discussion

Before the Court is Bebee's Motion for Stay and Abeyance. (ECF Doc. 4). In his motion, Bebee asks that this Court stay resolution of his Petition in order for it to be "ruled on timely after all state remedies have been exhausted which may be after the deadline for a Writ of Habeas Corpus . . . ." (*Id. at p. 3*). In his motion, Bebee acknowledges that he has an appeal

pending before the state appellate court regarding the denial of his Petition to Vacate or Set Aside Judgment of Conviction or Sentence. (*Id.* at p. 2).

AEDPA requires that state prisoners exhaust all claims in state court before those claims may be reviewed by district courts on habeas review. *See* 28 U.S.C. § 2254(b)(1). This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

District Courts were previously required to dismiss federal habeas corpus petitions that contained both exhausted and unexhausted claims – mixed petitions. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, the Supreme Court clarified in *Rhines v. Weber* that, in certain circumstances, a district court presented with a mixed petition may stay the case and permit the petitioner to present their unexhausted claims to the state court before the federal court undertakes review of the petition. 544 U.S. 269 (2005). In doing so, the Supreme Court recognized that if employed too frequently, stay and abeyance of mixed federal habeas corpus petitions would undermine AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings. *Id.* at 277. Frequent use of stay and abeyance would also decrease a petitioner's incentive to exhaust all of his state claims before filing his federal petition. *Id.* As such, a stay and abeyance should be given only in limited circumstances.

The *Rhines* Court provided the following considerations when determining whether granting a stay is appropriate: (1) the district court must determine that there is good cause for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims cannot be plainly meritless; and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Id.* at 277-78. "[I]f a petitioner presents a district court with a mixed

petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 278.

**i. Stay and Abeyance**

With the *Rhine* analysis in mind, I find the stay and abeyance is inappropriate in this case because Bebee has not established good cause for his failure to exhaust and because the vast majority of his grounds for relief appear to be plainly meritless. As *Rhine* cautions, availability of stay and abeyance may discourage a petitioner from seeking relief in state court which would contravene AEDPA's finality principles. I acknowledge that Bebee's failure to exhaust his claims was not due to intentionally dilatory tactics[7] as contemplated by the *Rhine* factors because Bebee appears to be diligent in his attempts to receive relief through the proper state court mechanisms. However, that diligence does not translate to good cause for granting stay given the procedural posture of his case.

Upon review of the state court dockets of Bebee's case, Grounds 4 through 25 of Bebee's habeas petition are alleged in his post-conviction petitions and presently awaiting review in state court. Petitioners must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). As a result of the fair

[7] I note that in his motion for stay and abeyance, Bebee asserts that he "is in the process of" filing another post-conviction motion in state court, asserting additional constitutional errors. This may wade into dilatory tactics, but also may give rise to additional habeas grounds in the future.

presentation rule, "errors alleged in collateral post-conviction relief proceedings are . . . outside the scope of federal habeas corpus review because challenges to post-conviction proceedings 'address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration,' which is the essence of a § 2254 federal habeas corpus petition and review." *Yuschak v. Sheldon*, 2020 WL 620373, at *3 (N.D.Ohio, 2020) (quoting *Cress v. Palmer*, 484 F.3d 844, 753 (6th Cir. 2007)). For this reason, at least 22 of Bebee's grounds for relief appear to be plainly meritless because they were not raised at the first opportunity – direct appeal – and at every subsequent stage of state review.[8]

Further, stay is unnecessary because Bebee will have ample time to file his habeas Petition in the event he is unsuccessful in his state court appeal.

AEDPA provides that a: "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute of limitations period runs from the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of directreview or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[8] I write that the grounds appear to be plainly meritless because notwithstanding these principles, Bebee may argue cause and prejudice to excuse the resulting prefeudal default of his failure to present. That question is not presently before the Court, so I do not opine as to whether such default would be excusable.

28 U.S.C. § 2244(d)(1)(A)-(D). The United States Supreme Court has held that "direct review" for purposes of § 2241(d)(1)(A) includes seeking certiorari. *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989). Therefore, the statute of limitations includes the 90 days that the petitioner has to seek certiorari whether or not such review is sought. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012), citing *Gonzalez v. Thaler*, 56 U.S. 134 (2012).

AEDPA allows for statutory tolling under § 2244(d)(2) when it states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016). Statutory tolling extends "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), or "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review." *Holbrook*, 833 F.3d at 615, quoting *Whitcomb v. Smith*, 23 F. App'x 271, 273 (6th Cir. 2001).

With this in mind, I take no position on whether statutory tolling applies at this time; it is for Bebee to calculate the impact of the ongoing state proceedings on the statute of limitations for his federal habeas petition. However, considering these principles, it appears that AEDPA's one-year statute of limitations is tolled because his petition for postconviction relief, which is still pending final review in state court, was filed before his conviction became final under AEDPA. Under section 2244(d)(1)(A), Bebee had one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file his petition. Bebee's convictions and sentence were affirmed by the state appellate court on December 19, 2024. JE on 12/19/2024, *State of Ohio v. Lajaun Bebee*,

No. CA-24-113734 (Dec. 19, 2024), https://cpdocket.cp.cuyahogacounty.gov/COA_CaseInformation_Docket.aspx?q=3Zu_YfkXK483ztEMvTezlitxIwIZmoY_EoKVbusiVnE1. He did not timely appeal to the Ohio Supreme Court, and the court denied his motion for delayed appeal. The Ohio Supreme Court denied the motion on May 13, 2025. Denied and cause dismissed, *State of Ohio v. Lajaun Bebee*, No. 2025-0350 (May 13, 2025), https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2025/0350. However, under Section 2241(d)(1)(A), Bebee's conviction does not become final until expiration of the time for seeking final review. Therefore, he receives the benefit of the 45 days provided to file his appeal with the Ohio Supreme Court. *See* Oh.S.Ct.Prac.R. 7.01(A)(1). Further, there is no indication on the United States Supreme Court docket that Bebee sought review, however for purposes of AEDPA, he gets the benefit of the time to seek that review as well – 90 days. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012), citing *Gonzalez v. Thaler*, 56 U.S. 134 (2012). Based on this timeline, Bebee's conviction became final on May 3, 2025. Bebee filed his post-conviction petition on April 23, 2025, before his conviction became final under AEDPA. Petition to Vacate or Set Aide Judgment of Conviction or Sentence, *State of Ohio v. Lajaun Bebee*, No. CR-23-677765-A (Apr. 23, 2025), https://cpdocket.cp.cuyahogacounty.gov/CR_CaseInformation_Docket.aspx?q=S0uky4QxOqtVQvsMU4ouv6nzzlbu0t3a1XF7-TJ58kw1.

Bebee asks this Court to stay his federal habeas proceedings while his post-conviction petitions are decided in state court because those decisions "may be after the deadline for Writ of Federal Habeas Corpus . . . ." (ECF Doc. 4, p. 3). Having found that Bebee has not demonstrate good cause, that the majority of his grounds for relief appear to be meritless, and because he will

likely have the benefit of the full AEDPA one-year statute of limitations, I find the extraordinary remedy of stay and abeyance inappropriate in this case.

**ii. Withdrawal of Grounds**

When a court determines that stay and abeyance is inappropriate, the court may allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. I recommend that the District Court provide Bebee the opportunity to decide whether he wishes to delete his unexhausted grounds or whether he wishes to dismiss his Petition and finalize his post-conviction proceedings in state court before returning for federal habeas review. I make this recommendation because Bebee specifically requested the stay for purposes of preserving the statute of limitations, indicating he does not wish to proceed solely on any exhausted claims. And as I discuss in detail above, it does not appear that dismissal of the entire petition will unreasonably impair Bebee's right to obtain federal relief under AEDPA's has a one-year statute of limitations.

## VI. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); see also *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural

grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

However, I make no recommendation as to a certificate of appealability. In this Report and Recommended Decision, I do not reach the merits of Bebee's petition and recommend that Bebee be given the opportunity to withdraw his unexhausted grounds for relief. Therefore, should the District Court agree with this recommendation, it would not resolve Bebee's constitutional claims, making a recommendation of a certificate of appealability inapplicable in these circumstances.

## VII. Recommendation

For the foregoing reasons, I recommend that Bebee' Motion for Stay and Abeyance (ECF Doc. 4) be denied. I further recommend that Bebee be offered the option to amend his petition to proceed without the unexhausted grounds.

Dated: August 18, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).